IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

RONNY LEE TRIMB LE                                                                                   PLAINTIFF

v.                         CASE NO.         3:10-CV-03106

MICHAEL J. ASTRUE, Commissioner
of Social Security Administration                                                                     DEFENDANT

## MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) and supplemental security income ("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

### I. Procedural Background:

The plaintiff filed his applications for DIB and SSI on January 31, 2008, alleging an onset date of May 24, 2007 , due to plaintiff's knee problems and high blood pressure. Plaintiff's applications were denied initially and on reconsideration. Plaintiff then requested an administrative hearing, which was held on July 29, 2009. Plaintiff was present and represented by counsel.

At the time of the administrative hearing, plaintiff was 45 years of age and possessed a high school education. The Plaintiff  had past relevant work ("PRW") experience as a

maintenance man and a truck driver (T. 148).

On February 18, 2010, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's degenerative joint disease of the right knee, pain disorder, and anxiety disorder and borderline intellectual functioning did not meet or equal any Appendix 1 listing. T. 10-11. The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to sedentary work with additional restrictions T. 12. With the assistance of a vocational expert, the ALJ then determined Plaintiff could perform assembly jobs, machine tender jobs and cashier jobs. T. 17.

## II. Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id.* "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one

year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III. Discussion:

**A. Steep Two:**

The ALJ found that the Plaintiff had severe impairments of degenerative joint disease of the right knee, adjustment disorder, pain disorder, anxiety disorder and borderline intellectual functioning. (T. 10). The Plaintiff first contends that the ALJ committed error by failing to

consider the Plaintiff's left knee impairment at steep two of the sequential evaluation. (ECF No. 8, p. 10).

Step two of the regulations involves a determination, based on the medical evidence, whether the claimant has an impairment or combination of impairments that significantly limits the claimant's ability to perform basic work activities. See 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir.2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir.1996).

At step two of the sequential evaluation process, the claimant bears the burden of proving that he has a severe impairment. *Nguyen v. Chater*, 75 F.3d 429, 430-431 (8th Cir. 1996). An impairment or combination of impairments is not severe if there is no more than a minimal effect on the claimant's ability to work. *See, e.g., Nguyen*, 75 F.3d at 431. A slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities is not a severe impairment. SSR 96-3p, 1996 WL 374181 (1996); SSR 85-28, 1985 WL 56856 (1985).

The ALJ determined the Plaintiff's right knee impairment was not severe. On November 16, 2007, Dr. Arnold performed arthroscopic surgery on Plaintiff's left knee (Tr. 281, 283). There was a post-operative diagnosis of left knee medial meniscus tear and a chondral defect of the trochlea (Tr. 281).The Plaintiff's treating physician, Dr. Arnold, performed a meniscectomy and chandrooplasy on the Plaintiff's right knee in 2007 (T. 267). On October 4, 2007 Dr. Arnold noted that he saw the Plaintiff "post right knee scope on 4/25/07" and that he "was doing great"

but his left knee continued to bother him. (T. 267).  In December 2007 Dr. Arnold noted that the plaintiff's right knee is doing good. (T. 265).  On March 11, 2008 Dr. Arnold noted that the Plaintiff's left knee was "doing very well" and he did not plan to see the Plaintiff for one year.  He did note that he should avoid lifting, pulling or pushing anything greater than 100 pounds and that he was not to squat (T. 317) but he authorized the Plaintiff to return to work (T. 318). In September 2009, Dr. Arnold noted right knee pain and opined that Plaintiff could only currently perform a sit down job (Tr. 14, 356-357, 360-361) but in December 2009 Dr. Arnold noted that his knee was "doing well" and he noted that he should avoid lifting, pulling or pushing anything greater than 100 pounds and that he was not to squat or climb  (T. 265). Dr. Arnold also noted that the Plaintiff was "lacking a good portion of the meniscus" (Id.).

 Dr. Arnold is a specialist and as a result his opinions are entitled to great weight. Opinions of specialists on issues within their areas of expertise are "generally" entitled to more weight than the opinions of non-specialists. See 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5).  *Guilliams v. Barnhart*  393 F.3d 798, 803 (C.A.8 (Mo.),2005), 20 C.F.R. § 404.1527 .

 An impairment or combination of impairments is not severe if there is no more than a minimal effect on the claimant's ability to work. *See, e.g., Nguyen*, 75 F.3d at 431. A slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities is not a severe impairment. SSR 96-3p, 1996 WL 374181 (1996); SSR 85-28, 1985 WL 56856 (1985).

 The Plaintiff has failed to show that his right knee impairments had anymore than a minimal effect upon his ability to work. Regardless, the step two analysis was resolved in Plaintiff's favor and the ALJ proceeded to step five. 10-19). Accordingly, the determinative issue

is whether substantial evidence supports the ALJ's residual functional capacity determination. The step two analysis is ultimately immaterial in this case, because the ALJ proceeded to step five. The ALJ explained that in making a determination as to Plaintiff's residual functional capacity, "the undersigned must consider all of the claimant's impairments, including impairments are not severe (20 CFR 404.1520(e), 404.1545, 416.920(e) and 416.945; SSR 96-8p)" (Tr. 9). Regulations 20 C.F.R. §§ 404.1523 and 416.923 provide that "we will consider the combined effect of all your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.

If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process." See also 42 U.S.C. § 423(d). Thus, once it is determined that an individual has a severe impairment for purposes of step two, the combined effect of all impairments are considered, regardless of whether they are a result of impairments that are labeled either severe or nonsevere. The regulations also provide:

> When you have a severe impairment(s), but your symptoms, signs and laboratory findings do not meet or equal those of a listed impairment in appendix 1 of this subpart, we will consider the limiting effects of all your impairments(s), even those that are not severe, in determining your residual functional capacity.
> 20 C.F.R. §§ 404.1545(e) and 416.945(e).

This illustrates that the labeling of an impairment as either severe or nonsevere is not significant at step four or five of the sequential evaluation process. The proper focus at step five is whether substantial evidence supports the ALJ's residual functional capacity (RFC) determination.

Even if the Plaintiff's impairment to his left knee were severe the ALJ failure to include it at this steep of the evaluation process was harmless.

**B. No Listed Impairment:**

The ALJ next determined that the Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in the regulations. (T. 11). This finding is not disputed by the Plaintiff and is supported by the record.

**C. Residual Functional Capacity:**

The ALJ next determined that the Plaintiff had the residual functional capacity to perform sedentary work except that he could only occasionally kneel, crouch, crawl, balance, push and pull with the bilateral extremities, and climb ramps and stairs, but that he could frequently stoop but he could not climb ladders, ropes, and scaffolds, that he could only engage in unskilled work. (T. 12).

**1. Determination**

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001).

Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003). "Under this step, the ALJ is required to set forth specifically a claimant's limitations and to determine how those limitations affect her RFC." *Id*.

A RFC Assessment was performed by Dr. Jerry Thomas, an agency consultive physician, on February 29, 2008 (T. 309-316). Dr. Thomas found the Plaintiff could lift 10 pounds occasionally, less than 10 pounds frequently; could stand and/or walk for about 2 hours in an 8 hour work day; and could sit for 6 hours in an 8 hour work day. His ability to push and pull was not limited (T. 310). Dr. Thomas felt the Plaintiff could balance and stoop frequently and that he could climb, kneel, crouch, and crawl only occasionally (T. 311). Dr. Thomas also noted that he had the benefit of a treating or examining source statement (T. 315). Dr. Thomas' finding were reviewed and confirmed by Dr. Bill F. Payne on May 6, 2008 (T. 320).

We have stated many times that the results of a one-time medical evaluation do not constitute substantial evidence on which the ALJ can permissibly base his decision. *See, e.g., Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir.1999) (stating that the opinion of a consultative physician does not generally satisfy the substantial evidence requirement). In this case, however, the ALJ did not just have an evaluation by a non-examining source but had substantial records from the Plaintiff's treating physician, Dr. Christopher Arnold.

Dr. Arnold performed several orthopedic procedures on both of the Plaintiff knees during 2007 (T. 281-305) and treated him post-operatively during 2008 (T. 317-319). Dr. Arnold is an orthopedic specialist and as a result his opinion is significant. Opinions of specialists on issues within their areas of expertise are "generally" entitled to more weight than the opinions of

non-specialists. See 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5). *Guilliams v. Barnhart* 393 F.3d 798, 803 (C.A.8 (Mo.),2005), 20 C.F.R. § 404.1527.

On March 11, 2008, after the Plaintiff had filed for disability, Dr. Arnold stated that the Plaintiff was "doing very well" and that he was going to recommend that he can go back to work. He did state that the Plaintiff should not "lift, push or pull more than 100 pounds" and that he should not do any squatting or climbing (T. 318).  Dr. Arnold saw the Plaintiff again on May 28, 2009 for a recheck of his right knee and noted that the "knee itself is doing well" but he did have some arthritis.  He recommended "no heavy lifting, pushing, pulling, squatting or climbing".  He recommended Glucosamine for the arthritis (T. 340).  The plaintiff did complain of some paresthesias above the right knee but Dr. Arnold did not thing this was related to his work injury (T. 341).  In September 2009 a Physical Residual Functional Capacity Questionnaire was sent to Dr. Arnold with a request for a very detailed evaluation. (T. 359-359).  Dr. Arnold did not answer any of the question on the questionnaire but merely indicated that the Plaintiff "was released for a sit down job" (T. 357). There is nothing in that RFC assessment that does not indicate that the Plaintiff has to be seated during the entire day.  While it is clear that the orthopedic surgeon did not wish to engage in a comprehensive evaluation of the Plaintiff it was clear in September 2009 as it was in 2008 that the Plaintiff was released from his doctor's care to return to some form of work.

The ALJ restricted the Plaintiff to sedentary work. Sedentary work represents a significantly restricted range of work, and individuals with a maximum sustained work capacity limited to sedentary work have very serious functional limitations." 20 C.F.R. Pt. 404, subpt. P, app. 2 § 201.00(h)(4). Sedentary work involves lifting no more than 10 pounds at a time and

occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary when carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a) and 416.967(a).

A person would not need to bend or twist and would need to stoop only occasionally to perform sedentary work. *Cf. Robinson v. Sullivan*, 956 F.2d 836, 841 (8th Cir.1992) (person would not need to crouch and would need to stoop only occasionally to perform substantially all sedentary and light jobs). *Ownbey v. Shalala* 5 F.3d 342, 344 (C.A.8 (Mo.),1993).

There is nothing in the Plaintiff's medical records or the Plaintiff's testimony that does not support the ALJ's determination that the Plaintiff can meet the requirements of the RFC as determined by the ALJ.

**2. Mental Evaluation**

In an attempt to show that the Plaintiff was more severely limited than the ALJ determined the Plaintiff was seen by Dr. Vann Smith on August 10, 2009 for a psychological evaluation (T. 330). Dr. Smith was of the opinion that the Plaintiff's clinical history, mental status examination and neuropsychodiagnostic screening test profile data, reveal a pattern of abnormal responses and pathgnomonic indices consistent with the presence of diffuse organic brain dysfunction of moderate severity and that the Plaintiff was "disabled at this time" (T. 332).

As this court has pointed out many times Dr. Smith opens his report by stating that the clinical history, "as obtained by the patient, is considered reliable". He notes that the medical records are being requested for review. He does not state what records were ordered , when they

were requested, or attach any documentation that the request was made. Certainly, all of the medical records that were available to the ALJ were available to the Dr. Smith at the time of his evaluation.

There is no support in the medical records to document Dr. Smith's opinion that the Plaintiff suffered traumatic brain injury nor did the Plaintiff ever claim any mental disability.

The fact that the plaintiff did not allege a mental impairment as a basis for his disability in his application for disability benefits is significant, even if the evidence of mental impairment was later developed. See *Smith v. Shalala*, 987 F.2d 1371, 1375 (8th Cir.1993); *Dunahoo v. Apfel*, 241, F. 3d 1033, 1039 (8th Cir. 2001). The Plaintiff's attorney acknowledged at the hearing that the Plaintiff did not indicate any problem with depression when he first met with him but that he wanted to leave the "record open" for that complaint. (T. 26). During the hearing the Plaintiff did testify that he was suffering depression and he amended his questionnaire during the hearing. (T. 198).

The Plaintiff never sought any kind of mental health treatment prior to his visit with Dr. Smith. See *Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (holding that lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration when evaluating Plaintiff's allegations of disability due to a mental impairment). It does not appear that any doctor treating the Plaintiff ever prescribed any medication for the Plaintiff concerning his depression. See *Banks v. Massanari*, 258 F.3d 820, 825-26 (8th Cir.2001) (ALJ properly discounted claimant's complaints of disabling depression as inconsistent with daily activities and failure to seek additional psychiatric treatment)

On October 1, 2009 the Plaintiff was see by Stephen Harris for a Psychological

Evaluation who diagnosed the Plaintiff with Borderline Intellectual Functioning, Adjustment Disorder, Pain Disorder and Anxiety Disorder and assessed his GAF at 50 (T. 346).

A GAF (global assessment of functioning) score is not determinative for Social Security purposes. The Social Security Administration has explained that, "[t]he GAF scale, which is described in the DSM-III-R (and the DSM-IV), is the scale used in the multiaxial evaluation system endorsed by the American Psychiatric Association. It does not have a direct correlation to the severity requirements in our mental disorders listings." 65 Fed. Reg. 50746, 50764-765 (Aug. 21, 2000), *cited in Jones v. Astrue*, No. 09-3263, — F.3d —, 2010 WL 3396835, * 13 n.4 (8th Cir. Aug. 31, 2010) (Commissioner declined to endorse the GAF scales to evaluate Social Security claims because the scales do not have a direct correlation to the severity requirements in mental disorders listings); *see also Howard v. Commissioner of Social Security*, 276 F.3d 235, 241 (6th Cir. 2002) (GAF score not essential to the RFC's accuracy).

Dr. Harris did not find any impairment in the Plaintiff day to day functioning (T. 346), Social Interaction, coping with basic work-like tasks, or persistence. (T. 347). He did note that the Plaintiff showed some difficulty in his ability to concentrate and to perform task in a timely manner. (T. 347) and that he had borderline intellectual functioning. (T. 346).

The ALJ took into consideration the Plaintiff's borderline intellectual functioning by restricting the Plaintiff to unskilled work. The ALJ pointed out that the regulations define unskilled work as work that need little or no judgment to do simple duties that can be learned on the job in a short period of time, and the job may or may not require considerable strength. (20 CFR 404.1568) (T. 12-13).

**3. Subjective Complaints:**

The Plaintiff seems to complain that the ALJ did not give a proper evaluation of the Plaintiff's subjective complaints of pain.

The ALJ must consider several factors when evaluating a claimant's subjective complaints of pain, including claimant's prior work record, observations by third parties, and observations of treating and examining physicians relating to 1) the claimant's daily activities; 2) the duration, frequency, and intensity of pain; 3) precipitating and aggravating factors; 4) dosage, effectiveness and side effects of medication; and 5) functional restrictions. *Casey*, 503 F.3d at 695 (8th Cir.2007) *(citing Polaski v. Heckler*, 729 F.2d 1320, 1322 (8th Cir.1984). The ALJ may discount subjective complaints when they are inconsistent with the evidence as a whole. Id. (citing Polaski, 739 F.2d at 1322). "The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered." *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir.2004).

The Plaintiff testified that the pain in his knees, since his injury, just comes and goes (T. 36) but the right knee was the worst (T. 37). When asked what made the pain in his knees severe he testified that it was the weather and if he does "too much" walking. When asked to explain what he meant by too much walking he testified that he was on his legs for more than two to three hours in a day. (Id.). There is nothing in the ALJ's RFC assessment that conflicts with the Plaintiff's testimony.

When the Plaintiff was seen by his treating physicians on May 16, 2006 (T. 273), March 7, 2007 (T. 243, 252), April 5, 2007 (T. 271) and July 27, 2007 he was only taking aspirin for his pain. (T. 237). On May 29, 2007 a post op follow up note stated that the Plaintiff was not in much pain (T. 269). On August 3, 2009 when the Plaintiff was seen by Dr. Morse for a

neurological evaluation for numbness above his right knee the Plaintiff noted that his only medication was Ibuprofen. (T. 327). There is no medical history of the Plaintiff being treated with prescription pain medication. *See Hepp v. Astrue*, 511 F.3d 798, 807 (8th Cir. 2008) (moderate, over-the-counter medication for pain does not support allegations of disabling pain).

The Plaintiff also testified that he had "nerve damage". (T. 35). The Plaintiff was referred to Dr. Michael Morse for a neurological evaluation which was performed on August 3, 2009. (T. 327). Dr. Morse stated that the numbness in the Plaintiff's right leg was a "non-anatomic distribution". He did not find any motor abnormalities and did not think that an EMG/nerve conduction test would add anything to his findings. He also stated that the Plaintiff did have sensation in the area but just complained of feeling numb but the numbness "is not limiting in any way". (T. 326).

When the Plaintiff was asked by the ALJ if he had been looking for any kind of work that would not require him to be on his feet all day the Plaintiff testified that he had not (T. 48).

On May 28, 2009 Dr. Trimble discussed the options of "observation versus injection versus meniscal transplant" and the Plaintiff told Dr. Trimble that he wanted to observe it. Thus, there was substantial evidence for the ALJ to doubt Plaintiff's complaints of disabling symptoms considering Plaintiff failed to seek more frequent and substantive treatment. See *Benskin v. Bowen*, 830 F.2d 878, 884 (8th Cir. 1987) (upholding ALJ's consideration of claimant's failure to seek medical attention where claimant's measures to relieve pain were not indicative of severe, disabling pain). *See Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993) (holding that treating physician's conservative treatment was inconsistent with plaintiff's allegations of disabling pain).

Assessing and resolving credibility issues is a matter that is properly within the purview

of the ALJ. *Johnson v. Chater*, 87 F.3d 1015, 1018 (8th Cir. 1996) (court will not substitute its own credibility opinion for that of the ALJ). The ALJ considered the medical evidence and testimony. The ALJ considered Plaintiff's testimony and his daily activities (Tr. 11, 13). The ALJ acknowledged that Plaintiff's impairments could reasonably be expected to cause symptoms (Tr. 13). The ALJ did not discount all of Plaintiff's complaints and she recognized that Plaintiff experienced limitations (Tr. 11-13). This is not a case in which the ALJ flatly rejected Plaintiff's contentions. The ALJ correctly found that Plaintiff's mental and physical impairments resulted in significant exertional and nonexertional functional limitations that restricted Plaintiff to less than a full range of sedentary work (Tr. 12-13).

V.     **Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision, and thus the decision should be affirmed.  The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice

Dated  this February 15, 2012.

                                                    /s/ *J. Marschewski*
                                                    HONORABLE JAMES R. MARSCHEWSKI
                                                    CHIEF UNITED STATES MAGISTRATE JUDGE